ED. WHITFIELD v. HOWARD DEPRIEST, et al.

Western Section.    October 29, 1927.

No petition for Certiorari was filed.

1. **Landlord and tenant. Liens.** Landlord not entitled to lien on tenant's crop for money advanced to tenant, after crop is made.
   In an action to establish a lien against defendant's crops to secure money paid out by the landlord where the evidence showed that the money was paid after the crops matured, held that the lien could not be established.

2. **Landlord and tenant. Liens.** Before a lien can be established under section 5304, of Shannon's Code the account must be sworn to.
   Where the account filed in an action to establish a lien against the tenant's crops was not sworn to as provided by section 5304 of Shannon's Code, held that the lien could not be established.

Appeal from Chancery Court, Benton County; Hon. Tom. C. Rye, Chancellor.

Affirmed.

C. N. Frazier, of Camden, for appellant.

Peeler & Peeler, of Camden, for appellee.

SENTER, J.    The complainant Ed. Whitfield filed his original bill in this cause against Howard Depriest and E. S. Byrd, alleging in substance that Depriest had made a peanut crop upon the lands of complainant in the year 1925; that when the peanuts were gathered they were placed in the warehouse of complainant with the agreement and understanding that complainant should have a lien upon the same for the payment of his alleged account against defendant Depriest; that the peanuts were sold to defendant E. S. Byrd, and that said Byrd had in his hands the proceeds arising from the sale of the peanuts. The bill seeks to recover a judgment against the defendant Depriest for the amount of the alleged account of $275.75, representing supplies furnished to Depriest, and cash furnished Depriest for use in the making of the crop of peanuts; and seeking to set up a lien on the property or the proceeds thereof under the landlord's furnishers lien law. The bill alleges that $150 of the amount is represented by a note executed by Depriest and on which complainant became surety to obtain money necessary for Depriest to make the crop, and that complainant had paid said note upon the failure of Depriest to pay the same, and that the remainder of the account is for supplies and seed furnished Depriest and used in making the crop. The bill then charged that Depriest had sold the peanuts to defendant E. S. Byrd, and that complainant

notified E. S. Byrd, or E. S. Byrd & Company, of the amount of his account, and requested that said Byrd, as the purchaser, pay to him the amount of said account, including the $150 note, and further charging that Byrd still had the funds in his hands, but that Depriest had refused to allow him to pay out of the same complainant's said debt. The bill further charges that complainant is entitled in this cause to a judgment against defendant Depriest for the amount of the account and note, and to an injunction if necessary enjoining the same E. S. Byrd, or E. S. Byrd & Company, from paying said funds to defendant Depriest, and that the same be subjected to complainant's claim. The prayer of the bill prays for a judgment in favor of complainant and against Depriest; and prays for an attachment if necessary to hold and make subject to complainant's debt the funds in the hands of defendant Byrd, arising from the proceeds of the sale.

After the original bill had been filed, the complainant filed an amended and supplemental bill, setting forth in substance the allegations contained in the original bill, and alleging further that since the filing of the original bill that W. R. Summers and Clint Russell, who were made defendants by the amended and supplemental bill, had instituted a suit against E. S. Byrd, or E. S. Byrd & Company, for an alleged indebtedness due the said Summers in about the sum of $250, claiming that said Summers had an alleged trust deed or chattel mortgage on the peanuts, and that defendant Russell was named as trustee in the trust deed, and that said suit was to recover under said trust deed from E. S. Byrd, or E. S. Byrd & Company, the amount of said note out of the proceeds of the sale of said peanuts. The bill alleges that said alleged trust deed was fraudulent, and was executed for the fraudulent purpose of defeating complainant in his prior rights to the peanuts, or the proceeds thereof to the amount of his debt. The amended bill sought to enjoin the suit at law, and that at the hearing the said trust deed claimed by defendant Summers and said Russell be held void and set aside.

No attachment was issued or levied under complainant's original and supplemental bills. An injunction was issued restraining Summers and Russell from prosecuting their suit at law before the Justice of the Peace before whom it was pending.

Depriest filed an answer to the original and amended bills, in which he denies that he owes complainant Whitfield $275; he admitted that he made a crop on Whitfield's land, but denied that Whitfield had a lien on said crop; or that Whitfield was entitled under the law to enforce a lien under the pleadings in this proceedings. He denied that he owed complainant an account for $275.75 for supplies, but alleged that complainant was indebted to him in certain sums for items set out in the answer, amounting to about

$51, and claimed that he was entitled to a set-off for that amount. Defendant Summers filed an answer to the amended and supplemental bill, and by which they deny all allegations of fraud in connection with the trust deed executed by Depriest to Russell as trustee, securing a note for $250 to Summers, and alleged that the note made by Depriest to Summers was for borrowed money, and was a bona fide debt against Summers; that the trust deed was duly and regularly executed and recorded in the Register's office of Benton county, and further alleged that they were entitled to receive out of the proceeds of the sale of the peanuts the amount of said debt, interest and attorney's fees, and a judgment against E. S. Byrd & Company, out of the proceeds of said peanuts the said sum of $250 accrued interest thereon, and attorney's fees are provided in the note, and for this purpose made the answer a cross-bill.

At the hearing of the cause the Chancellor found and so decreed that defendant H. S. Depriest was indebted to complainant Ed. Whitfield by account in the sum of $125.75, and by note in the sum of $150, and by interest on said note $10.50. The Chancellor further found that complainant Whitfield was indebted to Depriest for two-thirds of 537 pounds of peanuts, amounting to $12.53, and that Depriest was entitled to have said amount deducted, leaving a balance due and owing by Depriest to Whitfield the sum of $273.72, and decreed a judgment in favor of complainant Whitfield and against defendant Depriest for said sum, together with the costs of the cause "incident to the collection of said account and note, but no other costs than those incident to the collection of said note and account."

The Chancellor further decreed that complainant Whitfield did not have a lien upon the peanuts or the funds realized from the sale of the same to secure the payment of the said judgment of $273.72. And further decreed that complainant Whitfield was not entitled to recover any judgment against E. S. Byrd, or E. S. Byrd & Company, nor to subject the funds in the hands of said E. S. Byrd, or E. S. Byrd & Company, to the payment of said judgment.

The Chancellor further found and decreed that H. S. Depriest and Mollie Depriest executed a deed of trust to secure the payment of the $250 evidenced by the note payable to cross-complainant W. R. Summers; that said note is unpaid; that the peanuts on which said deed of trust is given were sold to E. S. Byrd for $473.76, and that said W. R. Summers has a lien upon said fund in the hands of E. S. Byrd for the payment of the said note of $250, the interest thereon, amounting to the sum of $15, and attorney's fees provided for in said note to the sum of $39.75, and decreed a judgment in favor of cross-complainant W. R. Summers against cross-defendant E. S. Byrd for said sums amounting to $304.75. The Chancellor further

decreed a judgment in favor of W. R. Summers against complainant Ed. Whitfield and surety on the cost bond for all the costs of the cause, except the costs incident to recovering a judgment on his note and account against H. S. Depriest.

From this decree of the Chancellor complainant Ed. Whitfield has appealed to this court, and has assigned errors. E. S. Byrd did not appeal from the decree.

Under the several assignment of error it is first contended that the court erred in finding the issues in favor of cross-complainants W. R. Summers and Clint Russell, and in not holding that appellant is entitled to recover a judgment against E. S. Byrd or E. S. Byrd & Company, and in holding that complainant Whitfield is not entitled in this proceedings to subject the funds in the hands of E. S. Byrd, or E. S. Byrd & Company, to the payment of his said debt; and in holding and decreeing that Summers has a superior lien on said funds by reason of said trust deed, and in adjudging the costs against the complainant, Whitfield, and surety on the cost bond. Second, that the court erred in holding that complainant Ed. Whitfield was not entitled to the relief sought by his original bill, and that the decree of the Chancellor is not supported by the evidence, and that the evidence preponderates against the judgment of the court.

These assignments of error may be disposed of together and collectively.

From the record it appears that Ed. Whitfield, the complainant, was the owner of the land on which the crop of peanuts in question were grown by Depriest during the year 1925. It appears that after the peanuts were harvested they were put into sacks and placed in a warehouse operated by Whitfield and Sykes, from November 15, to November 20, 1925. Whitfield was entitled to one-third of the peanuts grown on the farm as rent for the land, and his one-third were placed in sacks separate from the other two-thirds. No warehouse receipts were issued to Depriest, but two-thirds of the peanuts were placed in the warehouse in Depriest's name. E. S. Byrd bought the 144 bags of Depriest's peanuts on March 15, 1926, and for which Byrd was to pay $473.76. In the division of the peanuts at the warehouse Whitfield received 537 pounds more than his one-third his rent amounted to and this 537 pounds was worth $12.53. When the peanuts had been sold by Depriest to Byrd Whitfield demanded of Byrd that he pay him the amount he claimed Depriest owed him, which was $125.75 for supplies and the $150 note, and directed or instructed Byrd not to pay to Depriest the money for the peanuts until this debt had been paid. E. S. Byrd declined to pay out the money to either party until the matter could be adjusted or settled between them, and retained the proceeds in

his hands, W. R. Summers and Clint Russell instituted a suit before a Justice of the Peace, claiming that Summers held the note of Depriest in the sum of $250, secured by a trust deed executed by Depriest to Russell as trustee, covering Depriest's two-thirds interest in the peanuts grown on the lands of Whitfield. This suit was enjoined by defendant Whitfield in the supplemental bill.

It appears that the note of $150 on which Whitfield was surety for Depriest, and which was subsequently paid by Whitfield was dated December 31, 1925, more than thirty days after the peanuts had been gathered and placed in the warehouse. This note was signed by Depriest, and then signed by complainant Whitfield and one Matlock, and was paid by Whitfield on March 20, 1926. It cannot be consistently insisted that the note for $150 was executed to procure cash with which to make the peanut crop. It was not executed, nor any cash procured thereon, until after the peanut crop had been made, harvested and placed in the warehouse. There was no attachment issued or levied on the peanuts; nor was there attachment by garnishment against E. S. Byrd, the purchaser, of the proceeds realized from the sale of the peanuts. The alleged account for supplies alleged to have been furnished by complainant Whitfield is not sworn to. Section 5304 of Shannon's Code provides that a landlord shall have a further lien, in addition to the lien for rent, upon the growing crops for necessary supplies of food and clothing furnished by the landlord, provided, an account of such necessary supplies is kept as the articles are furnished, and the account sworn to before some Justice of the Peace.

By Section 6 of chapter 71 of the Acts of 1923, which is an act to provide a general landlord's crop lien law, it is provided as follows:

"That all of said crop liens may be enforced in any court of competent jurisdiction under the present or future law, by original suit, execution and levy, or by original suit, attachment and garnishment, and all demands may be joined in one separate suit. Before any proceeding shall be instituted for the enforcement of said lien, the holder shall itemize his claim, and have an affidavit made thereto either by himself or agent in the manner required by law, in which affidavit it shall be stated that the claim is correct, owing, unpaid and bona fide and not entitled to any credits or set-off's."

The Acts of 1923, being chapter 71, purports to be and is a general and comprehensive landlord's lien law, and sections 1, 2 and 3 of the act provides for the liens, and that they shall be superior to all other liens. By section 6 provision is made for the enforcement of the lien, and the procedure. The provision that the holder of the lien shall itemize the claim upon which he claims a lien, and have an affidavit made thereto either by himself or agent in the manner re-

quired by law, is a condition precedent to the enforcement of the lien. In Dougherty v. Kellem, 3 Lea, 643, sec. 5304 of Shannon's Code was construed. In that case the court said:

"But the last ground for the motion to quash, namely, that the account for supplies was not sworn to before the attachment was sued out, seems to have been well taken. It was manifestly the intention of the legislature, while securing the landlord, to protect the tenant. The Act of 1875 expressly provides, in both of its sections, that the account for supplies shall be sworn to before the issuance of the writ of attachment, and gives the lien in the first section for supplies only where the account for such supplies has been kept as the articles are furnished. The affidavit shall aver the fact that an account of the necessary supplies was kept as the articles were furnished, and that account must be sworn to before or at the time of suing out the attachment."

We are of the opinion there was no error in the holding by the Chancellor that the complainant did not have a lien against the peanuts in question, or the proceeds for the sale thereof under the facts and pleadings.

We are also of the opinon that there was no error in the decree of the Chancellor in holding and decreeing that cross-complainant Summers was entitled under the trust deed securing his note to recover against E. S. Byrd the amount of his note, interest and attorney's fees out of the proceeds of the sale of the peanuts. The note and trust deed securing the same was dated August 28, 1925, and the note was due and payable December 20, 1925. The trust deed was filed for registration August 28, 1925. There is a cancelled check given by Summers to Depriest for the sum of $250 showing that it was paid August 28, 1925, which check recites "For note." This note and trust deed to secure the same was executed for borrowed money, and there is no evidence of any fraud connected with the transaction.

We find no error in the decree of the Chancellor. All assignments of error are overruled and the decree of the Chancellor is affirmed. Appellant and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.